IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ERIC L. KOTY AND STACY L. KOTY, individually and on behalf of all others similarly situated, | Civil Action No.: 1:15-cv-5343 |
| Plaintiffs, | CLASS ACTION COMPLAINT |
| vs. | (Re: Defective Products) Jury Trial Demanded |
| WINDSOR WINDOW COMPANY d/b/a WINDSOR WINDOWS AND DOORS and WOODGRAIN MILLWORK, INC., Defendants. | |

Plaintiffs, Eric L. and Stacy L. Koty, individually, and on behalf of all others similarly situated, by their undersigned attorneys, for their complaint against the Defendants named herein, allege as follows:

## INTRODUCTION AND SUMMARY OF ACTION

1. This is a proposed class action brought by Plaintiffs on behalf of themselves and other consumers who own structures containing defective aluminum wood clad windows designed, manufactured, marketed, advertised, distributed, and sold by Defendants, Windsor Window Company d/b/a Windsor Windows and Doors, and Woodgrain Millwork, Inc. The windows contain latent defects that allow water and moisture to penetrate through the cladding of the window and wood preservative, resulting in premature wood rot, leaking, and other collateral damage to the windows and homes. Defendants' acts and omissions in connection with the design, manufacture, and sale of defective windows constitute fraud, negligence, breach

of implied warranty, breach of express warranty, and unjust enrichment. Declaratory relief is also appropriate.

## THE PARTIES

2.     Plaintiffs are natural persons and citizens of Illinois. They own and reside in a single-family home in Plainfield, Illinois in which Defendants' windows are installed.

3.     Defendant, Windsor Window Company d/b/a Windsor Windows and Doors, was and is a company organized and existing under the laws of the State of Idaho, with a principal place of business in the State of Iowa.  At all times relevant herein, Windsor Windows and Doors transacted and conducted business in Illinois.

4.     Defendant, Woodgrain Millwork, Inc., was and is a corporation organized and existing under the laws of the State of Oregon, with a principal place of business in the State of Idaho.

5.     At all times relevant herein, Defendant, Woodgrain Millwork, Inc., was the parent company of Windsor Windows and Doors, and jointly transacted and conducted business in Illinois.

6.     Defendants used, commingled, and combined their resources to design, develop, manufacture, market, and sell the windows at issue.

7.     At all times relevant herein, the Defendants were actual and/or de facto joint venturers in the design, development, manufacture, marketing, and sales of the windows at issue.

## JURISDICTION AND VENUE

8.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d)(2) (diversity jurisdiction) and the Class Action Fairness Act, in that: (i) there is complete diversity as Plaintiffs are citizens of Illinois and Defendants are citizens of states other

than Illinois, as they are domiciled, incorporated, and headquartered in Idaho, Iowa, and Oregon; (ii) the amount in controversy exceeds $5,000,000.00 (Five Million Dollars), exclusive of interest and costs; and (iii) there are 100 or more members of the proposed Plaintiff class.

9.     Venue lies in this District pursuant to 28 U.S.C. § 1391 because Plaintiffs reside in this Judicial District, and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.  Additionally, at all times relevant herein, Defendants conducted and/or transacted business in this Judicial District and, therefore, are subject to personal jurisdiction in this District.

## FACTUAL ALLEGATIONS

10.     Defendants hold themselves out to both the construction industry and the public at large as being providers of superior, quality, and durable products, including the windows that are the subject of this litigation.

11.     At all times relevant herein, Defendants were engaged in the marketing, sale, supply, and delivery of windows in the State of Illinois.

12.     At all times relevant herein, Defendants designed, manufactured, marketed, sold, supplied and distributed wood and wood clad windows ("the Windows").

13.     In May of 2007, Plaintiffs purchased a home with the property address of 15922 S. Selfridge Circle, Plainfield, Illinois.

14.     The Windows were installed in Plaintiffs' home during construction.

15.     The Windows are defective and fail to perform at Plaintiffs' residence and at class members' residences by permitting water intrusion through unsealed or inadequately sealed areas of the Windows' frame and sashes, and into the interior of the residences.

16.     The Windows are defective and fail to perform at Plaintiff's residence and at class members' residences by permitting water to penetrate the window components, wherein it is absorbed by wood members, and causes rot, premature degradation, leaking, and failure of the wood.

17.     Degradation of the wood components permits additional water infiltration into the home in an accelerated cycle.

18.     The wood degradation, rot, and leaking are latent damages masked by the Windows' cladding, jamb liners, and other window components, as well as by other building components such as trim and drywall.

19.     The water intrusion and above-described damages resulting from the Windows constitutes "occurrences" resulting in "property damage" to property other than Defendants' "product" as those are terms commonly defined and used in the typical commercial general liability insurance policy.

20.     The above-described defects are due to fundamental design, engineering, and manufacturing errors, which should have been within Defendants' expertise.

21.     Because the Windows rot, prematurely degrade, otherwise fail, and permit water intrusion, they violate the building codes and industry standards.

22.     The above-described deficiencies exist at the time the Windows leave the factory.

23.     Failure of the Windows begins upon installation, and continues during repeated and prolonged exposure to weather and ordinary use.

24.     Defendants knew or should have known that the defects were present at the time the Windows left their control.

25.     Defendants knew or should have known the potential for leakage, rot, premature degradation, and failure of their Windows, but failed to adequately correct the defective design, manufacturing, or formulation that resulted in said damage.

26.     Defendants knew or should have known the potential for leakage, rot, premature degradation, and failure of their Windows, but failed to adequately correct the defective manufacture and that resulted in said damage.

27.     Defendants failed to warn purchasers, installers, or users of the above-described risks of failures.

28.     The purchase of Defendants' Windows includes a written express warranty, which forms part of the basis of the bargain between Defendants and the purchaser at the time of sale.

29.     The Windows' written express warranty also forms part of the basis of the bargain between the seller of the home and home buyers, including Plaintiffs and class members.

30.     The typical purchase agreement for the sale and/or construction of class members' homes likely contains one or more provisions transferring or assigning manufacturers' and suppliers' warranties to them at the time of purchase or conveyance.

31.     The transfer or assignment of the manufacturers' and suppliers' warranties, which would include the window warranties, forms part of the basis of the bargain at the time Plaintiffs and class members purchased their homes.

32.     Even where a manufacturer or supplier warranty transfer provision is not present, the average homeowner expects at the time of purchase, his or her home comes with such warranties, including a window warranty against defects.

33.     Defendants also expressly and implicitly represent in documents available to the public that their warranty is part of the product being sold, and that the written warranties apply to the owners of the homes containing the Windows.

34.     Defendants represent in their express warranty and documents available to the public that the Windows would be free from defective materials and workmanship for at least 10 years.

35.     Plaintiffs and putative Class members relied upon these representations when Plaintiffs purchased the Windows and/or structures containing the Windows.

36.     Plaintiffs and putative Class members reasonably expected and expect that the Windows would last longer than 10 years.

37.     Defendants', their representatives, and/or agents representations, expressly and impliedly, through their website, brochures, and marketing materials that the Windows are suitable and free from defects, were intended to and likely did affect the market by inducing builders, contractors, suppliers, and others to purchase the Windows.

38.     Plaintiffs and Class members put Defendants on notice of the defects and damages.

39.     Defendants directed Plaintiffs and Class members to pay for an independent contractor to evaluate the Windows.

40.     Defendants failed and refused to respond to Plaintiffs' notice in accordance with their own warranty and representations, including failing and refusing to investigate the Windows.

41.     Defendants and/or their representatives failed to adequately remedy the defects and damages.

42.     Defendants were put on notice of defects and resultant damages in the Windows by other homeowners in Illinois and other states across the country.

43.     Defendants were put on notice of defects and resultant damages in the Windows through the filing of lawsuits across the country.

44.     Defendants' shipping of the Windows with actual or constructive knowledge of the defects, or with negligent or reckless disregard of the presence of defects, constituted a breach of their express warranty, and makes the limitations of the express warranty unconscionable in all respects, and therefore void *ab initio*.

45.     The published written warranties include the following limitations and exclusions:

a.  The warranty is ambiguous with regard to coverage of the Windows' wood components;

b.  The warranty limits coverage of wood warping;

c.  The warranty purports to exclude damages caused by design limitations and design defects;

d.  The warranty excludes the cost of labor for removal, repair, or replacement of defective parts, products, or glass;

e.  The warranty excludes the cost of repainting or refinishing associated with the repair or replacement of defective parts or products.

f.  The warranty requires that the homeowner be able to identify a "defect" in the Windows;

g.  The warranty places unreasonable time limitations on notifying Defendants of defects, including Defendants' unilateral determination of when the homeowner should have "reasonably" discovered a defect.

h.  The warranty shortens the warranty period by beginning from the date of manufacture, regardless of when the window is installed and put into use and operation.

i.  The warranty makes Defendants the final determiners of whether or not a defect exists;

j.  The warranty potentially requires payment of a field service fee for inspecting the Windows;

k.  The warranty requires the homeowner to produce information that may not be accessible or otherwise readily understandable, including IGU and/or glass codes;

l.  The warranty purports to limit Defendants' responsibility by providing a remedy of repair, replacement, or refund a portion of the original purchase price, solely at Defendants' option;

m.  The warranty purports to exclude any liability for consequential, incidental, or punitive damages;

n.  The warranty purports to exclude any liability in excess of the original purchase price of the product;

o.  The warranty limits repair and replacement parts and products to the remainder of the original warranty period;

p.  The warranty purports to disclaim all warranties, expressed or implied, including implied warranties of merchantability or fitness for a particular purpose;

q.  The warranty purports to disclaim performance ratings identified by the AAMA and NFRC ratings affixed to the Windows by the Defendants;

r.  The warranty purports to disclaim future performance of the Windows;

s.   The warranty purports to disclaim any obligation to comply with building standards, including applicable building codes;

t.   The warranty purports to allow Defendants to inconsistently apply the warranty at their own discretion;

u.   The warranty's 10-year limitation is in and of itself unconscionable; and

v.   In other such ways revealed during discovery, and/or otherwise determined at trial.

46.   The warranty is not a negotiated contract and is so one-sided that no reasonable person would ever knowingly agree to its terms if properly disclosed.

47.   Further, Defendants have engaged in a pattern and practice of failing to honor or discouraging warranty claims by directing the homeowner to pay for independent contractor evaluation, failing to adequately respond to the homeowner, and/or requiring the homeowner to pay for all costs associated with repair or replacement of the Windows, including the labor for such repair or replacement.

48.   The above described pattern and practice by Defendants have the effect of discouraging defect claims by class members or continuing to pursue remedies through the Defendants.

49.   Moreover, during contact with class members, Defendants conceal their knowledge of defects in the Windows in the class members' residences.

50.   As Defendants have known or should have known of their Windows' defects and have failed to timely honor it, the warranty has failed of its essential purpose and the limitations therein are null and void, and the Plaintiffs and class members have otherwise not received the

value for which they, their builders, or contractors bargained for at the time the Windows were purchased or transferred to homeowners.

51.     The defects in Defendants' Windows also make the Windows unfit for their intended use.

52.     Given their leaking, rotting, premature degradation, and failure, the Windows have a reduced life expectancy, and require unexpected maintenance, repair, and replacement by Plaintiffs and class members.

53.     The Windows' defects and resultant damages have caused a diminution of the value of the homes.

54.     Defendants knew or should have known that the Windows did and do not satisfy industry standards.

55.     Defendants knew or should have known that their Windows were defective in design and manufacture, not fit for their ordinary and intended use, not merchantable, and failed to perform in accordance with the advertisements, brochures, representations, marketing materials, and warranties disseminated by Defendants.

56.     Defendants' Windows failed to conform to the reasonable expectations of ordinary consumers such as Plaintiffs and Class members.

57.     Because they leak, and allow for increased water absorption, water penetration, rot, degradation, cause reduced life expectancy, and otherwise fail, the Windows are neither durable nor suitable for use as an exterior building product.

58.     The above-described defective conditions of the Windows and resultant damages are present in Plaintiffs' home and are common among Class members.

59.     Plaintiffs and Class members have been proximately damaged by the Windows' above-described defective condition and Defendants' above-described conduct.

## PLAINTIFFS' EXPERIENCE

60.     Plaintiffs own a home located at 15922 S. Selfridge Circle, Plainfield, Illinois in which Defendants' Windows are installed.

61.     Defendants' Windows were installed in Plaintiffs' home during its construction in the spring of 2007.

62.     Plaintiffs' builder, Checkmate Custom Homes ("Checkmate"), ordered the Windows on their behalf.

63.     In purchasing Defendants' Windows over all other brands of windows, Plaintiffs and Checkmate relied on the representations made by Defendants and Defendants' representatives that the Windows were high quality and free from defects.

64.     Plaintiffs first saw signs of moisture in or around 2010 and contacted Defendants.

65.     Defendants assured Plaintiffs that the moisture was a result of high winds and rain and not related to the Windows themselves. Plaintiffs believed in good faith and relied on Defendants' assurances that the Windows were not defective.

66.     In or around January 2015, Plaintiffs again noticed signs of moisture in their Windows and notified Defendants of their warranty claim for the defects and damages with the Windows, including window leaking and damage to the windows and other property.

67.     Defendants referred Plaintiffs to a third party contractor who came out and inspected the Windows. However, Defendants refused to pay for the labor required to address the issues with the Windows.

68. Thus, Defendants failed and refused to respond to Plaintiffs' notice in accordance with their own warranty and representations, including failing and refusing to remedy the defects and damages.

69. Unknown to Plaintiffs at the time, the Windows purchased were defective in that they allowed water penetration, which caused condensation, wood rot, leaks, mold and other failures as described herein.

70. Defendants knew of the defect in the Windows in 2007, but wrongfully concealed it from Plaintiffs and Checkmate.

71. The characteristics of the Windows' defects (that allowed for the water to penetrate the aluminum cladding and failed to protect the wood from rot) were present in the Windows when they left the factory, and were part of the Windows by design and manufacture.

72. The Windows allowed water to intrude into Plaintiffs' home resulting in other property damage to the home including, but not limited to, surrounding drywall, molding, floors and ceiling.

73. Further, when notified of the issues with the Windows, Defendants and/or their representatives have failed to adequately remedy the defects and damages with the Windows.

## CLASS ACTION ALLEGATIONS

74. Plaintiffs bring this action individually and as representative of all those similarly situated pursuant to Rule 23, F.R.C.P., on behalf of the Class. The Class is defined as follows:

DAMAGES CLASS:

All persons and entities that own structures located within the State of Illinois in which Defendants' wood or wood clad windows are installed.

<u>INJUNCTIVE RELIEF CLASS</u>:

> All persons and entities who are current or former owners of a structure in which Defendants' wood or wood clad windows are installed.

Excluded from the Classes are: (a) any Judge or Magistrate presiding over this action and members of their families; (b) Windsor and any entity in which Windsor has a controlling interest or which has a controlling interest in Windsor and its legal representatives, assigns and successors of Windsor; and (c) all persons who properly execute and file a timely request for exclusion from the Classes.

Plaintiffs propose that the Class be divided into subclasses if and as necessary to align class interests.

75. *Numerosity*: The Class is composed of a thousand or more persons geographically dispersed throughout the State of Illinois, the joinder of whom in one action is impractical. Moreover, upon information and belief, the Class is ascertainable and identifiable from Defendants' records or identifying marks on the Windows.

76. *Commonality*: The critical question of law and fact common to the Class that will materially advance the litigation is whether the Windows are inherently defective, contrary to the expectations imparted by Defendants through their warranties, representations, and omissions.

77. Furthermore, other questions of law and fact common to the Class that exist as to all members of the Class and predominate over any questions affecting only individual members of the Class include the following:

a. Whether the Windows are defective;

b. Whether Defendants were negligent in their design and manufacture of the Windows;

13

c.  Whether Defendants knew or should have known about the defective condition of the Windows;

d.  Whether Defendants concealed and/or failed to disclose the defective condition of the Windows to consumers;

e.  Whether Defendants breached their express and implied warranties;

f.  Whether the Plaintiffs are entitled to prejudgment interest, attorneys' fees, and costs from Defendants; and

g.  Whether Defendants' conduct was negligent, reckless, willful, wanton, intentional, fraudulent or the like, entitling Plaintiffs to statutory or punitive damages from Defendants.

78.  *Typicality*: Plaintiffs' claims are typical of the claims of the members of the Class, as all such claims arise out of Defendants' conduct in designing, manufacturing, marketing, advertising, warranting and selling the defective Windows and Defendants' conduct in concealing the defects in the Windows to owners, contractors, developers, and suppliers.

79.  *Adequate Representation*: Plaintiffs will fairly and adequately protect the interests of the members of the Class and has no interests antagonistic to those of the Class given that Plaintiffs are members of the Class they also seek to represent. Plaintiffs have retained counsel experienced and competent in construction litigation, product liability, complex litigation and consumer class actions.

80.  *Predominance and Superiority*: This class action is appropriate for certification because questions of law and fact common to the members of the Class predominate over questions affecting only individual members, and a Class action is superior to other available methods for the fair and efficient adjudication of this controversy, since individual joinder of all

14

members of the Class is impracticable. Should individual Class members be required to bring separate actions, this Court and/or courts throughout Illinois would be confronted with a multiplicity of lawsuits burdening the court system while also creating the risk of inconsistent rulings and contradictory judgments. In contrast to proceeding on a case-by-case basis, in which inconsistent results will magnify the delay and expense to all parties and the court system, this class action presents far fewer management difficulties while providing unitary adjudication, economies of scale and comprehensive supervision by a single court.

Moreover, Plaintiffs envision no unusual difficulty in the management of this action as a class action and the amount of money at stake for each member is not sufficient for each member to hire their own counsel and experts and to bring their own action.

## ESTOPPEL FROM PLEADING THE STATUTE OF LIMITATIONS

81.    Plaintiffs and Class members are within the applicable statute of limitations for the claims presented hereunder because Plaintiffs and Class members did not discover the defect, and could not reasonably have discovered the defect.

82.    Due to the concealed location of rot and other primary leak points, Plaintiffs are often unaware of the wood rot, degradation, and other failures until the end or expiration of Defendants' warranty period.

83.    Defendants are estopped from relying on any statutes of limitation or repose by virtue of their acts of concealment, which include Defendants' concealment from Plaintiffs, Class members, and the general public that their Windows were defective, while continually marketing the Windows as a durable and suitable product.

84.    Defendants had a duty to disclose that their Windows were defective, unreliable, and inherently flawed in design and/or manufacture.

85.     Plaintiffs and Class members had no knowledge of, and no reasonable way of discovering, the latent defects found in Defendants' Windows at the time they purchased the product or their homes, residences, buildings, and other structures.

86.     Defendants did not notify, inform, or disclose to Plaintiffs and Class members that there were defects in the Windows. Because Defendants failed in their duty to notify Plaintiffs and Class members that their product was defective, the statute of limitations should be tolled on Plaintiffs' and Class members' claims.

87.     Pursuant to the doctrine of Equitable Tolling and/or Equitable Estoppel, the period for bringing claims shall not be barred due to the statute of limitations or statute of repose. The interest of justice requires equitable tolling in this case. In applying this doctrine the relevant factors include the claimant's diligence, the claimant's knowledge of the relevant facts and whether these statements misled the claimant. Accordingly, with respect to each and every cause of action and/or Count asserted herein, Plaintiffs expressly plead Equitable Tolling and/or Equitable Estoppel and their application thereto.

## ESTOPPEL FROM PLEADING WARRANTY LIMITATIONS AND DISCLAIMERS

88.     Defendants are also estopped from relying on any warranty limitation or disclaimer as a defense to Plaintiffs' and Class members' claims.

89.     By virtue of Defendants' acts, the Windows installed in Plaintiffs' and Class members' residences have not lived up to Defendants' warranties and representations, and given the defective condition of the Windows and the premature deterioration the Windows that require unexpected maintenance, wear and/or replacement, the Windows have not proven to be of the value bargained for and/or of that compared to other windows.

90.     Defendants knew or should have known that their Windows were defective in design and/or manufacture, and said Windows were not fit for their ordinary and intended use, were not merchantable, and failed to perform in accordance with the advertisements, marketing materials, and warranties disseminated by Defendants or with the reasonable expectations of ordinary consumers such as Plaintiffs and Class members.

91.     Accordingly, any warranty provided by Defendants fails its essential purpose because its purports to warrant that the Windows will be free from defects for a prescribed period of time when in fact said Windows fall far short of the applicable warranty period.

92.     Moreover, Defendants' warranties are woefully inadequate to repair and replace failed Windows, let alone reimburse for any damage suffered to the underlying structure due to the inadequate protection provided by the product. The remedies available under Defendants' warranties are limited to such an extent that they do not provide a minimum adequate remedy.

93.     As a result, any time limitations, exclusions, or disclaimers which restrict the remedies encompassed within Defendants' warranties are unconscionable and unenforceable, and therefore, Defendants are estopped from relying on the same.

## COUNT I
## (NEGLIGENCE)

94.      The allegations set forth in paragraphs 1 through 93 are incorporated as fully as if stated verbatim herein as paragraph 94.

95.     At all times material hereto, Defendants designed and manufactured the Windows.

96.     Defendants had a duty to Plaintiffs and Class members to design and to manufacture Windows that were free of latent defects that would cause the Windows to leak, rot, prematurely degrade, and otherwise fail.

17

97.     Defendants had a duty to Plaintiffs and Class members to test the Windows to ensure adequate performance of the Windows for a reasonable period of use.

98.     Defendants had a duty to Plaintiffs and Class members to ensure that the Windows' components were suitable as an exterior product, either by testing or by verifying third-party test results.

99.     Defendants had a duty to Plaintiffs and Class members to ensure their Windows complied with industry standards and all applicable building codes throughout Illinois.

100.    Defendants had a duty to Plaintiffs and Class members to forewarn purchasers, installers, and users regarding the known risk of product failures.

101.    Defendants failed to exercise ordinary and reasonable care in the design and manufacture of the Windows and in determining whether the Windows that they sold, and continue to sell, contained a defect that would result in failure of the Windows to perform as reasonably expected.

102.    The negligence of Defendants, their agents, servants, and/or employees, include the foregoing, as well as the following acts and/or omissions:

    a.    designing, manufacturing, processing, distributing, delivering, supplying, inspecting, marketing and/or selling Windows without adequately and thoroughly testing them to all applicable standards and building code;

    b.    designing, manufacturing, processing, distributing, delivering, supplying, inspecting, marketing and/or selling Windows without adequately testing long-term performance;

    c.    negligently failing to ensure that the Windows conformed to all

18

applicable standards and building codes; and

d.      concealing information concerning the defects inherent in the Windows from Plaintiffs and the Class members, while knowing that its Windows were defective and non-conforming with accepted industry standards and building codes.

103.    Plaintiffs and Class have been damaged as a direct and proximate result of the negligence, carelessness, recklessness, willfulness, and wantonness of Defendants as above-described.

104.    As Defendants' conduct was negligent, careless, reckless, willful, wanton, intentional, fraudulent, or the like, the Plaintiff class is entitled to an award of punitive damages against Defendants.

## COUNT II
## (BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY)

105.    The allegations set forth in paragraphs 1 through 104 are incorporated as fully as if stated verbatim herein as paragraph 105.

106.    Defendants are designers, manufacturers, and suppliers of the Windows, and for a number of years, marketed, warranted, distributed, and/or sold the Windows in Illinois.

107.    Defendants manufactured and sold their Windows to Plaintiffs, Class members, and/or Plaintiffs' and Class members' agents and, in so doing, impliedly warranted to them that the product was of merchantable quality and fit for its intended use.

108.    Defendants' Windows were not of merchantable quality and not fit for intended use when they left the factory due to the defects in the Windows described herein.

109.    The numerous and serious defects described herein make the Windows unfit and inappropriate for its intended use within structures.

110.     The Windows are also unfit for their particular purpose. Defendants manufactured and distributed their Windows in climates with multiple seasons and geographic locations. Defendants knew, or should have known, that their Windows would be subjected to varying temperatures and weather conditions, including snow, ice, frost, and rain cycles, throughout each year.  Due to the defects and resultant leakage, rot, premature degradation, and other failures, the Windows are unfit for their particular purpose.

111.     Despite having knowledge of the Windows' defects, Defendants' have failed to provide an adequate remedy.

112.     As Defendants' express warranty (and warranty claims process thereunder) has been breached and/or is unconscionable and/or fails of its essential purpose, as described above, the limitations on implied warranties contained within the express warranty should be deemed null and void and of no effect or limitation.

113.     As a result, Defendants breached their implied warranties to Plaintiffs and Class members by producing, manufacturing, distributing and selling them a defective product that was unfit for its intended use and for a particular purpose.

114.     Plaintiffs and Class members suffered and will continue to suffer losses as alleged herein, in an amount to be determined at trial.

115.     As a direct and proximate result of Defendants' breach of the implied warranty on the Windows, Plaintiffs and Class members have suffered actual and consequential damages.

**COUNT III**
**(BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE)**

116.     The allegations set forth in paragraphs 1 through 115 are incorporated as fully as if stated verbatim herein as paragraph 116.

117. Defendants entered into contracts with retailers, suppliers and/or contractors to sell their Windows that was to be installed at Plaintiffs' and the Class members' properties.

118. Plaintiffs and the Class members are intended third-party beneficiaries of those contracts because it was the clear and manifest intent of Defendants that the contracts were to primarily and directly benefit Plaintiffs and the Class members.

119. At the time they entered into contracts with retailers, suppliers and/or contractors, Defendants knew and had reason to know that their Windows were being purchased for the particular purpose of being installed at Plaintiffs' and the Class members' properties and the Class members, directly or indirectly, relied on Defendants' representations and warranties that their Windows were suitable for the particular purpose of being installed at Plaintiffs' and the Class members' properties.

120. Plaintiffs and the Class members, directly or indirectly, relied on Defendants' representations that the Windows conformed to all applicable building codes and industry standards.

121. Defendants warranted the Windows were fit for the particular purpose of being installed at Plaintiffs' and the Class members' properties.

122. Defendants breached the implied warranty of fitness for a particular purpose by selling Windows that were defective and not reasonably fit for their ordinary purpose.

123. Defendants' Windows are defective because they cause and continue to cause damage as described more fully herein.

124. As a result of Defendants' breach of the implied warranty of fitness for a particular purpose, Plaintiffs and the Class members have suffered and continue to suffer actual and consequential damages.

## COUNT IV
## <u>BREACH OF EXPRESS WARRANTY</u>

125.     The allegations set forth in paragraphs 1 through 124 are incorporated as fully as if stated verbatim herein as paragraph 125.

126.     Defendants marketed and sold Windows into the stream of commerce with the intent that the Windows would be purchased by Plaintiffs and Class members.

127.     The representations and warranties made by Defendants in marketing and selling their Windows formed part of the basis of the bargain between Defendants and the purchasers of the Windows at the time of the sale.

128.     Purchase agreements for the construction or sale of residences or structures, including Plaintiffs' purchase agreement, contained provisions transferring or assigning the manufacturers' warranties, including window warranties.  Such provisions are valid transfers and assignments, and the transferred and assigned warranties formed part of the basis of the bargain at the time the home was purchased.

129.     Defendants' warranty certifies that they will replace or repair components of their products found to be defective for at least ten (10) years.

130.     Upon information and belief, all of Defendants' written warranties applicable to Class members contain the same or similar provisions.

131.     Through their written warranties, brochures, marketing materials, website, and other representations regarding the performance, durability, and quality of the Windows, Defendants created express warranties for the benefit of Plaintiffs and Class members.

132.     Thus, Defendants' express warranties and representations are applicable to the Windows installed in Plaintiffs' and Class members' residences and/or structures.

133.     Specifically, Defendants expressly warranted to Plaintiffs and Class members

that the Windows purchased by Plaintiffs and Class members were free from defects in materials and workmanship that substantially impair their operation or performance and that they would last at least 10 years.

134.    However, Defendants' warranties fail their essential purpose because they purport to warrant that the Windows will be free from manufacturer defects for at least 10 years when in fact the Windows fall far short of the applicable warranty period. To the contrary, due to the leakage in them, Defendants' Windows begin failing after only several years' or less use.

135.    Moreover, Defendants' warranties are woefully inadequate to repair and replace failed Windows, let alone reimburse for any damage suffered to the underlying structure due to the inadequate protection provided by the product. The remedies available in Defendants' warranties are limited to such an extent that they do not provide a minimum adequate remedy. Further, the warranty is inadequate because by its 10-year limitation alone, Defendant seeks to reduce the reasonable expected life of the product.

136.    Defendants have denied, failed to pay in full, and/or failed to respond to warranty claims.

137.    Accordingly, the limitations on remedies and the exclusions in Defendants' warranties are unconscionable and unenforceable.

138.    As a result of Defendants' breaches of express warranties, Plaintiffs and Class members have suffered actual damages in that they purchased homes, residences, buildings, and other structures containing defective Windows that have failed or are failing prematurely due to leakage and increased moisture absorption problems. This failure has required or is requiring Plaintiffs and Class members to incur significant expense in repairing or replacing their Windows. Replacement is required to prevent on-going and future damage to the underlying

structures or interiors of Plaintiffs' and Class members' residences.

139.    Thus, as a direct and proximate result of Defendants' breach of the express warranty on the Windows, Plaintiffs and Class members have suffered actual and consequential damages.

**COUNT V**
**(VIOLATION OF ILLINOIS CONSUMER FRAUD AND**
**DECEPTIVE BUSINESS PRACTICES ACT)**
**815 ILCS 505/1, *et seq.***
**(On behalf of Plaintiffs and Illinois Class Members)**

140.    Plaintiffs on behalf of themselves and similarly situated residents of Illinois, adopt and incorporate by reference the allegations in paragraphs 1 through 139 as though fully set forth herein as paragraph 140.

141.    The conduct described above and throughout this Complaint took place within the State of Illinois and constitutes unfair business practices in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, et seq. (hereinafter the "CFA").

142.    The CFA applies to the claims of Plaintiffs and all Illinois Class members because the conduct which constitutes violations of the ICFA by the Defendants occurred within the State of Illinois.

143.    The CFA prohibits unfair methods of competition and unfair and deceptive acts or practices, including among other things, "the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, . . . whether any person has in fact been misled, deceived or damaged thereby."

144.    Defendants' engaged in the concealment, suppression, or omission in violation of the CFA when, in selling and advertising the Windows, they knew that there were defects in the Windows which would result in water damage and ensuing other property damage.

145.    Defendants engaged in the concealment, suppression, or omission of the aforementioned material facts with the intent that others, such as Plaintiffs, Plaintiffs' Builders, Class members, Class member's Builders, and/or the general public would rely upon the concealment, suppression, or omission of such material facts and purchase their Windows containing said design defect.

146.    Plaintiffs, Plaintiffs' Builder, Class members, and/or Class member's builders would not have purchased the Windows had they known or become informed of the material defects in the Windows.

147.    Defendants' concealment, suppression, or omissions of material facts as alleged herein constitute unfair, deceptive and fraudulent business practices within the meaning of the I CFA.

148.    Defendants have acted unfairly and deceptively by misrepresenting the quality of the Windows.

149.    Defendants either knew, or should have known, that the Windows were defectively designed and/or manufactured and would allow water intrusion, which would result in severe damages to the structures, such that the structures were not as represented to be as alleged herein.

150.    Upon information and belief, Defendants knew that, at the time Windows left their control, the Windows contained the defect described herein resulting in water intrusion and wood rot. At the time of sale, the Windows contained design and construction defects. The defects reduced the effectiveness and performance of the Windows and rendered the Windows unable to perform the ordinary purposes for which it was used as well as cause the resulting damage described herein.

151.     Once these defects became known, consumers (such as Plaintiffs) were entitled to disclosure of that fact because: (a) a significant risk of water leakage would be a material fact in the consumer's decision-making process; and (b) without Defendants' disclosure, consumers would not know that there is any risk of water leakage.

152.     Defendants' misrepresentations of the quality of the Windows violated the ICFA.

153.     Further, Defendants also engaged in an unfair act or practice in violation of the ICFA when it failed to provide an express warranty to all owners of home with its defective Windows.

154.     Despite the plain language of Defendants' express warranty which extends to the initial homeowner, by denying warranty claims by asserting that the express warranty does not cover the damages between the parties, Defendants have committed an unfair act or practice.

155.     As a direct and proximate cause of the violation of the ICFA, described above, Plaintiffs and members of the Class have been injured, in that they have purchased homes or other structures with the defective Windows based on nondisclosure of material facts alleged above. Had Plaintiffs and Class members known the defective nature of the Windows used on their structures, they would not have purchased their structures, or would have paid a lower price for their structures

156.     Defendants used unfair methods of competition and unfair or deceptive acts or practices in conducting their businesses. This conduct constitutes fraud within meaning of the CFA. This unlawful conduct is continuing, with no indication that Defendants will cease.

157.     As a direct and proximate result of Defendants' unfair and deceptive acts and practices, Plaintiffs and the other members of the Class will suffer damages, which include,

without limitation, costs to inspect, repair or replace their Windows and other property, in an amount to be determined at trial.

158.     As a result of the acts of consumer fraud described above, Plaintiffs and the Class have suffered ascertainable loss in the form of actual damages that include the purchase price of the products for which Defendants are liable to the Plaintiffs and the Class for treble their ascertainable  losses, plus attorneys' fees and costs, along with equitable relief prayed for herein in this  Complaint.

### COUNT VI
### (FRAUDULENT MISREPRESENTATION)

159.     The allegations in paragraphs 1 through 158 are incorporated as fully as if stated verbatim herein as paragraph 159.

160.     Defendants, through their marketing materials, website, brochures, product literature, warranties and agents, made representations to the Plaintiffs and Class members, builders, suppliers and the public about the superior quality and durability of their Windows and components.

161.     Specifically, Defendants have represented that their windows are durable, of "superior construction;" "constructed with the highest grade materials, hardware, and glass;" and that Defendants "carefully monitor every product throughout the entire manufacturing process;" and have made similar representations throughout various time periods in which the Windows have been sold.

162.     Defendants transmitted said representations to the Plaintiffs and Class members, builders, suppliers and the public while failing to disclose the defective condition of their Windows, including the substantial leakage and consequential damages that would or could likely result from their Windows' defects.

27

163.    Defendants have a pecuniary interest in making these representations and non-disclosures and had a duty to communicate truthful information to the Plaintiffs and Class members, builders, suppliers and the public.

164.    Defendants breached their duties by failing to exercise due care in making the above-described representations and non-disclosures and the Plaintiffs and Class members, builders, suppliers and the public relied on these representations and non-disclosures.

165.    Plaintiffs and Class members have suffered a pecuniary loss as a direct and proximate result of their reliance upon these representations and non-disclosures.

## COUNT VII
## (FRAUDULENT CONCEALMENT)

166.    Plaintiffs on behalf of themselves and all others similarly situated, adopt and  incorporate by reference the  allegations set forth in paragraphs 1 through 165 above as though fully set forth herein as paragraph 166.

167.    Defendants knew or should have known that the Windows were defective in design, were not fit for their ordinary and intended use, and performed in accordance with neither the  advertisements, marketing materials and warranties disseminated by Windsor nor the reasonable  expectations of ordinary consumers.

168.    Defendants fraudulently concealed from and/or intentionally failed to disclose to  Plaintiffs and the Class that the Windows are defective.

169.    Defendants  had exclusive knowledge of the defective nature of the Windows at the time  of sale. The defect is latent and not something that Plaintiffs or Class members, in the exercise of  reasonable  diligence, could have  discovered  independently  prior  to  purchase, because it is not  feasible.

170.    Defendants had the capacity to, and did, deceive Plaintiffs and Class

members into believing that they were purchasing Windows free from defects.

171. Defendants undertook active and ongoing steps to conceal the defect. Plaintiffs are aware of nothing in their advertising, publicity or marketing materials that disclosed the truth about the defect, despite their awareness of the problem.

172. The facts concealed and/or not disclosed by Windsor to Plaintiffs and the Class members are material facts in that a reasonable person would have considered them important in deciding whether to purchase (or to pay the same price for) the Windows from their builders.

173. Defendants intentionally concealed and/or failed to disclose material factors for the purpose of inducing Plaintiffs and the Class to act thereon.

174. Plaintiffs and the Class justifiably acted or relied upon the concealed and/or non- disclosed facts to their detriment, as evidenced by their purchase of the Windows.

175. Plaintiffs and Class members suffered a loss of money in an amount to be proven at trial as a result of Defendants' fraudulent concealment and nondisclosure because: (a) they would not have purchased the Windows on the same terms if the true facts concerning the defective Windows had been known; (b) they paid a price premium due to they would be free from defects; and (c) the Windows did not perform as promised. Plaintiffs also would have initiated this suit earlier had the defect been disclosed to them.

176. By reason of the foregoing, Plaintiffs and the Class members suffered, and continue to suffer, financial damage and injury.

## COUNT VIII
## (UNJUST ENRICHMENT)

177. Plaintiffs on behalf of themselves and all others similarly situated, adopt and incorporate by reference the allegations set forth in paragraphs 1 through 176 as though fully set

forth herein as paragraph 177.

178.     Plaintiffs and Class members conferred a benefit on Defendants when they purchased the Windows.

179.     Defendants have been unjustly enriched in retaining the revenues derived from Class members' purchases of the Windows, the retention of which under these circumstances is unjust and inequitable because the Windows were defective in design, were not fit for their ordinary and intended use, and performed in accordance with neither the advertisements, marketing materials and warranties disseminated by Defendants nor the reasonable expectations of ordinary consumers and caused the Plaintiffs and Class Members to lose money as a result thereof.

180.     Plaintiffs and Class members suffered a loss of money as a result of Defendants' unjust enrichment because: (a) they would not have purchased the Windows on the same terms if the true facts concerning the defective Windows had been known; (b) they paid a price premium due to the fact the Windows would be free from defects; and (c) the Windows did not perform as promised.

181.     Because their retention of the non-gratuitous benefit conferred on them by Plaintiffs and Class members is unjust and inequitable, Defendants must pay restitution to Plaintiffs and the Class members for their unjust enrichment, as ordered by the Court.

182.     Plaintiffs and the Class members are entitled to restitution of, disgorgement of, and/or the imposition of a constructive trust upon, all profits, benefits, and other compensation obtained by Defendants from their deceptive, misleading, and unlawful conduct.

**COUNT IX**
**(VIOLATION OF MAGNUSON-MOSS ACT)**

183.     Plaintiffs on behalf of themselves and all others similarly situated, adopt and

incorporate by reference the allegations set forth in paragraphs 1 through 182 as though fully set forth herein as paragraph 183.

184.     The Magnuson-Moss Consumer Products Liability Act, 15 U.S.C §2301, et seq. ("MMCPWA" or the "Act") provides a private right of action to purchasers of consumer products against retailers who, *inter alia*, fail to comply with the terms of a written warranty, express warranty and/or implied warranty.  As demonstrated above, Defendants have failed to comply  with the terms of their warranties, written, express and implied, with regard to the Windows that it  advertised, distributed, marketed and/or sold.

185.     Plaintiffs and the members of the Class are "consumers" under the MMCPWA.

186.     Defendants have been given a reasonable opportunity by Plaintiffs and other Class  members to cure such failures to comply and have repeatedly failed to do so.

187.     By virtue of the foregoing, Defendants and other members of the Class are entitled to  an award of damages and other appropriate relief, including attorneys' fees.

## COUNT X
## (DECLARATORY RELIEF 28 U.S.C. § 2201)

188.     Plaintiffs on behalf of themselves and all others similarly situated, adopt and  incorporate by reference allegations set forth in paragraphs 1 through 187 as though fully set forth herein as paragraph 188.

189.     Defendants have acted or refused to act on grounds that apply generally to the  Declaratory Relief Class, so that  final injunctive relief or corresponding declaratory relief is  appropriate respecting the Class as a whole within the meaning of Fed. R. Civ. P. 23(b)(2).  Plaintiffs seeks a ruling that:

a.  the Windows have a defect which results in a premature failure and  premature rotting of wood component of the sash.  The rotting of the wood  component may not be detectable until after the warranty has expired. The Court finds

that this defect is material and requires disclosure for all of these windows;

b. the Windows have a defect in workmanship and material that allows water to penetrate behind the aluminum clad sash component of the window resulting in premature rotting of the wood component, which rot may progress to adjacent wood components, and that the rotting of the wood component may not be detectable until after the existing warranty provided has expired. The Court declares that all persons who own structures containing Windows are to be provided the best practicable notice of the defect, which cost shall be borne by Defendants;

c. certain provisions of Defendants' warranty are void as unconscionable;

d. the 10-year limitation on the warranty is removed;

e. the limitation of the warranty to the date of manufacture, rather than the date of installation, is removed;

f. Defendants shall re-audit and re-assess all prior warranty claims, including claims previously denied in whole or in part, where the denial was based on warranty or on other grounds, of claims related to wood rot, and pay the full cost of repairs and damages; and

g. Defendants will establish an inspection program and protocol, under Court supervision, to be communicated to Class members, which will require inspection, upon request, of a Class member's structure to determine whether wood rot is manifest. Any disputes over coverage shall be adjudicated by a Special Master appointed by the Court and/or agreed to be the parties.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, pray

for a judgment against Defendants as follows:

a. For an order certifying the Classes, pursuant to Fed. R. Civ. P. Rule 23, appointing Plaintiffs as representative of the Classes, and appointing the law firms representing Plaintiffs as Class Counsel;

b. For compensatory damages sustained by Plaintiffs and the Damages Class;

c. For equitable and/or injunctive relief for the Declaratory Relief Class;

d. For payment of costs of suit herein incurred;

32

e.      For both pre-judgment and post-judgment interest on any amounts  awarded;

f.      For punitive damages;

g.      For payment of reasonable attorneys' fees and expert fees as may be  allowable under applicable law; and

h.      For such other and further relief as the Court may deem just and proper.

## **JURY DEMAND**

Plaintiffs on behalf of themselves and on behalf of the Class members, hereby demand a trial by jury as to all issues so triable.

Edward Eshoo, Jr.
Michael W. Duffy
Childress Duffy, Ltd.
500 North Dearborn Street, Suite 1200
Chicago, Illinois 60654
eeshoo@childresslawyers.com
mduffy@childresslawyers.com

Panagiotis "Pete" V. Albanis, Esq.
Morgan & Morgan – Complex Litigation Group
12800 University Drive Suite 600
Fort Myers, FL 33907
239-432-6605 – tel
239-433-6836 – fax
palbanis@forthepeople.com

Frank M. Petosa, Esq.
Morgan & Morgan – Complex
Litigation Group
600 North Pine Island Road
Suite 400
Plantation, FL 33324
954-318-0268 - tel
954-333-3515 - fax
fpetosa@forthepeople.com

Jonathan Shub
Jshub@kohnswift.com
**KOHN, SWIFT & GRAF, P.C.**
One South Broad Street, Suite 2100
Philadelphia, PA 19107-3304