IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ERIC L. KOTY AND STACY L. KOTY, and JOHN GEORGE, individually and on behalf of all others similarly situated, | ) ) ) | Civil Action No. 1:15-cv-5343 |
| | ) | |
| Plaintiffs, | ) ) | |
| | ) | Honorable Andrea R. Wood |
| v. | ) ) | |
| WINDSOR WINDOW COMPANY d/b/a WINDSOR WINDOWS AND DOORS, and WOODGRAIN MILLWORK, INC., | ) ) ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR RULE 12(b)(6) PARTIAL MOTION TO DISMISS THE AMENDED COMPLAINT

COTSIRILOS, TIGHE, STREICKER, POULOS & CAMPBELL, LTD.

Matthew S. Ryan
33 North Dearborn Street
Suite 600
Chicago, Illinois 60602
(312) 263-0345

*Of Counsel:*

ARTHUR, CHAPMAN, KETTERING, SMETAK & PIKALA, P.A.

Michael P. North (MN #230716)
Sarah E. Bushnell (MN #326859)
500 Young Quinlan Building
81 South Ninth Street
Minneapolis, MN 55402-3214
(612) 339-3500
(612) 339-7655

## TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................1

FACTS ...................................................................................................................2

LEGAL STANDARDS ..........................................................................................4

ARGUMENT ..........................................................................................................5

I.     The Economic Loss Doctrine Bars Plaintiffs' Negligence Claim (Count I) .....................5

II.    Plaintiffs Fail to Allege Any Facts Sufficient to State Fraud Claims (Counts III-IV) .......6

       A.     Rule 9(b)'s Heightened Pleading Standard Bars Plaintiffs' Fraud Claims ............7

       B.     Because Defendants Had no Duty to Disclose to Plaintiffs,
              Plaintiffs' Fraud Claims Fail ................................................................10

III.   The Kotys' Express Warranty Claim (Count II) Fails Because The Kotys
       Have Not Alleged Any Facts Indicting That Defendants Breached The Warranty .........12

       A.     Defendants Honored the Express Warranty ..........................................12

       B.     The Kotys' Efforts To Avoid Enforcement Of The Labor Exclusion Fail ..........13

              1.     Estoppel Does Not Apply .................................................................13

              2.     The "Fails Its Essential Purpose" Test Does Not Apply ...............15

              3.     The Express Warranty's Labor Exclusion Is Not Unconscionable ...............17

IV.    The Unjust Enrichment Claim (Count VIII) Fails Because an Express
       Warranty Governs ..............................................................................18

V.     Plaintiffs' Requested Declaratory Relief Claim (Count V)—Which Consists
       Largely of *Injunctive* Relief—Cannot be Granted Under the
       Declaratory Relief Statute ..............................................................19

CONCLUSION .....................................................................................................21

## TABLE OF AUTHORITIES

**Page**

**Cases**

*Alexandra Global Master Fund, Ltd. v. Ikon Office Solutions, Inc.*,
No. 06 CIV. 5383 (JGK), 2007 WL 2077153, at *9 (S.D.N.Y. July 20, 2007) ......................10

*Am. United Logistics, Inc. v. Catellus Dev. Corp.*, 319 F.3d 921, 926 (7th Cir. 2003)
(applying Illinois law), *as amended on denial of reh'g* (Apr. 3, 2003) ....................................5

*Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) ................................................4

*Avery v. State Farm Mutual Auto Insurance Co.,* 865 N.E. 2d 801, 846-47 (Ill. 2005) ................9

*Ball v. Sony Electronics Inc.*, 2005 WL 2406145, at *6 (W.D. Wis. Sept. 28, 2005) ......15, 17, 18

*Bankers Trust Co. v. Old Republic Ins. Co.,* 959 F. 2d 677, 683 (7th Cir. 1992) ...........................9

*Basic v. Fitzroy Eng'g, Ltd.*, 949 F. Supp. 1333, 1338 (N.D. Ill. 1996)…………………………20

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) ................................................................4

*Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014) .........................7, 10

*Chicago Heights Venture v. Dynamit Nobel of Am., Inc.*,
782 F.2d 723, 729 (7th Cir. 1986) ........................................................................................6

*Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 525 (1992) ..................................................12

*Cocroft v. HSBC Bank USA, N.A.*, 796 F.3d 680, 687 (7th Cir. 2015) ....................................7

*Cornucopia Inst. v. U.S. Dep't of Agric.*, 560 F.3d 673, 676 (7th Cir. 2009) ..............................20

*Deveraux v. City of Chicago,* 14 F.3d 328 (7th Cir. 1994) ................................................19

*Ellis v. Louisiana-Pac. Corp.*, 699 F.3d 778, 787 (4th Cir. 2012) ...........................................12

*Great W. Cas. Co. v. Volvo Trucks N. Am., Inc.*, No. 08-CV-2872, 2009
WL 588432, at *2 (N.D. Ill. Feb. 13, 2009) .......................................................................2

*Greenberger v. GEICO Gen. Ins. Co.*, 631 F.3d 392, 401 (7th Cir. 2011) ................................11

*Hanover Ins. Co. v. N. Bldg. Co.*, 751 F.3d 788, 794 (7th Cir. 2014),
*cert. denied*, 135 S. Ct. 280 (U.S. 2014) ...........................................................................17

*Harbison v. Louisiana-Pac. Corp.*, 602 F. App'x 884, 886–87 (3d Cir. 2015) ..........................18

*Hongbo Han v. United Contl Holdings, Inc.*, 762 F.3d 598, 603 n.1 (7th Cir. 2014) ...................2

*Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 711 (7th Cir. 2002) ……………………………………20

*Indus. Lift Truck Serv. Corp. v. Mitsubishi Int'l Corp.*, 432 N.E.2d 999, 1003
 (Ill. Ct. App. 1982) ........................................................................................................18

*Intrastate Piping & Controls, Inc. v. Robert-James Sales, Inc.*, 733 N.E.2d 718,
 725 (Ill. Ct. App. 2000) ..................................................................................................16

*Jamie S. v. Milwaukee Pub. Sch.*, 668 F.3d 481 (7th Cir. 2012) ..................................21

*Johnson v. Shemonic*, No. CIV.10-071-GPM, 2010 WL 3894019,
 at *5 (S.D. Ill. Sept. 30, 2010) .......................................................................................20

*Kaczmarek v. Microsoft Corp.*, 39 F. Supp. 2d 974, 975 (N.D. Ill. 1999) .......................2

*Kennedy v. MI Windows & Doors, Inc.*, No. 2:12-CV-2305-DCN,
 2013 WL 267853, at *4 (D.S.C. Jan. 24, 2013) .............................................................11

*LaSalle Nat. Trust, N.A. v. Schaffner*, 818 F. Supp. 1161, 1173 (N.D. Ill. 1993) .......................20

*Limestone Dev. Corp. v. Vill. Of Lemont, Ill.,* 520 F.3d 797 (7th Cir. 2008) .................4

*Manning v. Ashland Chem. Co.*, 498 F. Supp. 1382, 1383 (N.D. Ill. 1980) ................................11

*Martin v. LG Elecs. USA, Inc.*, No. 14-CV-83-JDP,
 2015 WL 1486517 (W.D. Wis. Mar. 31, 2015) ..............................................................19

*Marvin Lumber & Cedar Co. v. PPG Indus., Inc.*, 223 F.3d 873, 877 (8th Cir. 2000) ...............12

*Moorman Mfg. Co. v. Nat'l Tank Co.*, 435 N.E.2d 443, 449 (Ill. 1982) .........................................5

*Neptuno Treuhand—Und. Verwaltungsgesellschaft Mbh. v. Arbor*,
 692 N.E.2d 812 (Ill. Ct. App. 1998) ...............................................................................11

*Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964 ((N.D. Cal. 2008) ....................................8

*Olson v. Bemis Co.*, 800 F.3d 296, 306 (7th Cir. 2015) ........................................................13, 14

*Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v.
 Walgreen Company,* 631 F. 3d 436, 443 (7th Cir. 2011) ...........................................9

*Prima Tek II, L.L.C. v. Klerk's Plastic Indus., B.V.*, 525 F.3d 533, 541 (7th Cir. 2008) ............18

*Redarowicz v. Ohlendorf,* 441 N.E. 2d 324 (Ill. 1982) .......................................................6

*Reese v. Ford Motor Co.*, 499 F. App'x 163, 168–69 (3d Cir. 2012) ...........................14

*Reid v. Unilever U.S., Inc.*, 964 F. Supp. 2d 893, 913–14 (N.D. Ill. 2013) .................12

*Rockwell Int'l Corp. v. IU Int'l Corp.*, 702 F. Supp. 1384, 1388 (N.D. Ill. 1988)………………20

*Ruth v. A.O. Smith Corp.,* No. 1:04-CV-18912, 2005 WL 2978694 ...........................11

*Steffel v. Thompson,* 415 U.S. 452 (1974) ....................................................................19

*United States v. Wood*, 925 F.2d 1580, 1582 (7th Cir. 1991) ........................................2

*Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994) ........10

*V-M Corp. v. Bernard Distrib. Co.*, 447 F.2d 864, 865, 868–69 (7th Cir. 1971) ........16

*Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541 (U.S. 2011) ......................................21

*Washington Courte Condo. Ass'n-Four v. Washington-Golf Corp.*,
 501 N.E.2d 1290, 1294 (Ill. Ct. App. 1986) .......................................................5

*Weidner v. Karlin,* 932 N.E. 2d 602, 605 (Ill. App. Ct. 2010) ...................................7, 8

*Weiss v. MI Home Prods., Inc.*, 877 N.E.2d 442, 445–46 (Ill. Ct. App. 2007) ..........15

*Wheeling Trust & Sav. Bank v. Tremco Inc.*, 505 N.E.2d 1045, 1049–50
 (Ill. Ct. App. 1987) ...............................................................................................6

*Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 567 (7th Cir. 2012) ..........................7

*Williams v. Illinois Dep't of Corr.*, 2011 WL 10481473, at *6 (Ill. Ct. App. Feb. 18, 2011) ....20

**<u>Other</u>**

Federal Rules of Civil Procedure Rule 9(b) .......................................6, 7, 8, 9, 10, 11, 12

Federal Rules of Civil Procedure Rule 12(b)(6) ...........................................................4

Federal Rules of Procedure Rule 23 ..............................................................................21

28 U.S.C. §2201 .......................................................................................................19, 20

810 ILCS 5/2-719 ..............................................................................................15, 16, 17

Defendants, THE WINDSOR WINDOW COMPANY ("Windsor") and WOODGRAIN MILLWORK, INC., ("Woodgrain") (collectively, "Defendants") respectfully submit this Memorandum of Law in Support of Their Rule 12(b)(6) Partial Motion to Dismiss.

## INTRODUCTION

This is a product defect case in which the Plaintiff homeowners allege that windows in their homes manufactured by Defendant The Windsor Window Company ("Windsor") suffer from design defects that permit water intrusion. Windsor offered an express warranty to any homeowner who purchased a home containing Windsor windows, and Plaintiffs' claims rise or fall based on the terms of the applicable express warranty. However, because Plaintiffs do not like the explicit limitations in the warranty, namely the labor exclusion, they assert five additional claims, generally premised on tort, fraud, and quasi-contract theories. But the law does not permit such claims when an express warranty governs and the fraud allegation is based on nothing more than conclusory statements and is conceptually unsupportable.

At the end of the day, Plaintiffs' express warranty claims also fail. Mr. George's warranty claim will require some limited discovery to bear this out, and so it is not the subject of this motion. But the Kotys' warranty claim requires no such discovery, because they have failed to allege a key ingredient of all breach-of-warranty claims: a breach. They base their claim on Windsor not paying for labor costs in response to their warranty claim. But the warranty expressly states that labor costs are excluded from the warranty. Adhering to the warranty cannot breach it.

Therefore, and as argued within, all but George's breach of express warranty claim must be dismissed.

1

**FACTS**[1]

Plaintiffs Eric and Stacy Koty and John George own homes in Illinois, construction of which completed in 2007. FAC ¶¶ 13-14. During construction, aluminum-clad windows manufactured by Windsor were installed. FAC ¶¶ 15, 75, 95. The Kotys' windows were purchased by their builder, Checkmate Custom Homes. FAC ¶ 66. George's windows were purchased by himself, through distributor Absolute Windows, Inc., and construction of his home was overseen by his builder, Laurence Builders, Inc. FAC ¶¶ 79-81, 83. All windows installed in these two homes were Pinnacle windows, subject to the Pinnacle 20/10 Limited Warranty.[2] In the purchase agreement under which Checkmate conveyed the Kotys' house to the Kotys,

---

[1] Except with respect to the identity of the applicable warranties, the "facts" recited

[2] The version of the Pinnacle warranty that applies to the Kotys' windows is attached to the 1/8/2016 declaration of Rick McMillen as Exhibit A. *See* Decl. of Rick McMillen, ¶¶ 4-5, 7 (Jan. 8, 2016). This version, which applies to Pinnacle windows manufactured between April 1, 2005, and February 28, 2007, is likely the version that applied to George's windows, as they were installed "during construction in 2006-2007." FAC ¶ 85. But, in an abundance of caution, Windsor has provided two other versions of the warranty, which applied to all Pinnacle windows manufactured during March 2007 (Exhibit B to the McMillen Declaration) and all Pinnacle windows manufactured from April 2007 through July 2007 (Exhibit C to the McMillen Declaration). The three versions are almost identical and have no material difference.

This Court may consider the express warranty on a Rule 12(b)(6) motion because it is central to Plaintiffs' breach of express warranty claim (Count II). *See Great W. Cas. Co. v. Volvo Trucks N. Am., Inc.*, No. 08-CV-2872, 2009 WL 588432, at *2 (N.D. Ill. Feb. 13, 2009) (considering warranty attached to motion to dismiss because it was "central" to plaintiff's claims that the defendant breached the warranty); *Kaczmarek v. Microsoft Corp.*, 39 F. Supp. 2d 974, 975 (N.D. Ill. 1999) (considering warranty attached to motion to dismiss because "[Plaintiff] claim[ed] that the alleged defect in the software she purchased violates Microsoft's express and implied warranties covering the software"); *see also Hongbo Han v. United Contl Holdings, Inc.*, 762 F.3d 598, 603 n.1 (7th Cir. 2014) ("The plaintiff attached the MileagePlus contract in response to the motion to dismiss. Because the terms of the MileagePlus contract are central to Han's complaint, we may consider them in ruling on a motion to dismiss."); *United States v. Wood*, 925 F.2d 1580, 1582 (7th Cir. 1991) (considering bankruptcy decision for motion for judgment on the pleadings "as having been incorporated by reference").

Checkmate assigned to the Kotys the express warranty that applied to their house's windows. FAC ¶ 132.

The Pinnacle warranty warrants that, for non-glass-component defect claims brought within 10 years of manufacture, Windsor provides free replacement parts, but will not pay for labor costs. McMillen Decl., Exs. A, B, and C. Despite this explicit exclusion of labor costs, the Kotys allege that Defendants breached the warranty when, after the Kotys made a warranty claim in 2015 as to alleged water leakage, "Defendants refused to pay for the labor required to address the issues with the Windows." FAC ¶¶ 70-71. George alleges that Defendants breached the warranty when, after he made a warranty claim as to alleged moisture (during some un-identified time between 2007 and 2016), Defendants told him that "the moisture was a result of a maintenance issue, and not a warranty issue," and "refused to pay for any inspection of the windows to determine the cause of the problem." FAC ¶¶ 89-91.

On June 17, 2015, the Kotys filed the initial Complaint, alleging ten claims:  negligence (Count I), breach of implied warranty of merchantability (Count II), breach of implied warranty of fitness for a particular  purpose (Count III), breach of express warranty (Count IV), violation of Illinois Consumer Fraud and Deceptive Business Practices Act (Count V), fraudulent misrepresentation (Count VI), fraudulent concealment (Count VII), unjust enrichment (Count VIII), violation of the Magnuson–Moss Warranty Act (Count IX), and declaratory relief (Count X).

Defendants answered and moved for judgment on the pleadings on all counts. Instead of responding to the Defendants' motion for judgment on the pleadings, on December 9, 2015, the Kotys and George filed their First Amended Complaint ("FAC"), dropping four of the Kotys' original ten counts – namely, those for breach of implied warranty of merchantability, breach of

implied warranty of fitness for a particular purpose, fraudulent misrepresentation, and violation of the Magnuson-Moss Warranty Act. Six claims remain in the Amended Complaint: negligence (Count I), breach of express warranty (Count II), violation of Illinois Consumer Fraud and Deceptive Business Practices Act (Count III), fraudulent concealment (Count IV), unjust enrichment (Count V), and declaratory relief (Count VI).

Defendants now move to dismiss all of the Kotys' claims and all of George's claims except for his express warranty claim (Count II).

## LEGAL STANDARDS

In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quotation omitted). Allegations are inadequate when limited to "labels and conclusions," "a formulaic recitation of the elements of a cause of action," *Twombly*, 550 U.S. at 555, and "'naked assertion[s],'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Moreover, "[i]f discovery is likely to be more than usually costly, the complaint must include as much factual detail and argument as may be required to show that the plaintiff has a plausible claim." *Limestone Dev. Corp. v. Vill. of Lemont, Ill.*, 520 F.3d 797, 803–04 (7th Cir. 2008); *see also Twombly*, 550 U.S. at 557-58 ("[S]omething beyond the mere possibility of loss causation must be alleged, lest a plaintiff with a largely groundless claim be allowed to take up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value.") (quotations omitted).

## ARGUMENT

**I. The Economic Loss Doctrine Bars Plaintiffs' Negligence Claim (Count I).**

It is black letter law in Illinois that Plaintiffs cannot recover on a negligence theory for the solely economic losses alleged. *Moorman Mfg. Co. v. Nat'l Tank Co.*, 435 N.E.2d 443, 449 (Ill. 1982). "The economic loss doctrine denies a tort remedy for product defects when the loss is rooted in disappointed contractual or commercial expectations." *Am. United Logistics, Inc. v. Catellus Dev. Corp.*, 319 F.3d 921, 926 (7th Cir. 2003), *as amended on denial of reh'g* (Apr. 3, 2003). "To recover in tort under the economic loss doctrine, a party must show harm above and beyond a party's contractual or commercial expectations." *Id.*

Indeed, as set forth below, the Illinois courts have resoundingly rejected negligence claims for the very same damages Plaintiffs allege: water damage caused by defective, leaky windows. Specifically, Plaintiffs allege that "[t]he windows contain latent defects that allow water and moisture to penetrate through the cladding of the window and wood preservative, resulting in premature wood rot, leaking, and other collateral damage to the windows and homes." FAC ¶ 1.

But Illinois courts have uniformly rejected negligence claims for exactly these kinds of damages time and again. For example, in *Washington Courte Condo. Ass'n-Four v. Washington-Golf Corp.*, the Illinois Court of Appeals dismissed the plaintiffs' negligence count alleging mold, "water damage to insulation, walls, ceilings, and electrical outlets" caused by defective windows. 501 N.E.2d 1290, 1294 (Ill. Ct. App. 1986). The court ruled that "the gravamen of plaintiffs' complaint . . . is that the windows and sliding doors did not work, which constitutes an allegation of economic loss" that cannot, as a matter of law, give rise to a negligence claim. *Id.*

Similarly, in *Wheeling Trust & Sav. Bank v. Tremco Inc.*, the plaintiff building owner filed a negligence claim against the defendant for defective windows. 505 N.E.2d 1045, 1049–50 (Ill. Ct. App. 1987). The court concluded that the alleged damages allegedly caused by the leaky windows—streaking and etching on the windows and a potential reduction in the building's value—were economic losses that cannot be recovered in tort. *Id.*; *see also Chicago Heights Venture v. Dynamit Nobel of Am., Inc.*, 782 F.2d 723, 729 (7th Cir. 1986) (water damages to structure caused by a leaky roof constituted economic losses and were therefore not recoverable on a negligence theory); *Redarowicz v. Ohlendorf,* 441 N.E. 2d 324 (Ill. 1982) (rejecting negligence claim under economic loss doctrine for water leakage and consequent damage to the roof and basement caused by defective chimney).

Plaintiffs allege the exact same damages that the plaintiffs alleged in all the aforementioned cases, in which the courts concluded that the claims for negligence were barred by the economic loss doctrine. The same result follows here, where the gravamen of Plaintiffs' complaint is that the windows did not work. Therefore, because Plaintiffs allege only economic losses, their negligence claims (Count I) must be dismissed.

## II.     Plaintiffs Fail to Allege Any Facts Sufficient to State Fraud Claims (Counts III-IV).

Plaintiffs' effort to turn their product liability claims for damages caused by allegedly defective, leaky windows into two separate fraud claims is a paradigmatic example of trying to fit the proverbial square peg into a round hole. This case is about allegedly leaky windows, not any scheme to defraud. Tellingly, the FAC is completely devoid of any factual allegations describing the "who, what, when, where or how" of the alleged fraud, falling far short of the heightened pleading standards required under Rule 9(b). Moreover, Plaintiffs fail to allege a single false statement that could possibly give rise to a fraud claim. Finally, Plaintiffs'

allegations that Defendants failed to disclose the alleged defects in the windows to the Plaintiffs assume a legal duty that does not exist. Given these shortcomings, the fraud claims must be dismissed.

**A. Rule 9(b)'s Heightened Pleading Standard Bars Plaintiffs' Fraud Claims.**

Plaintiffs allege two fraud claims. One is based on the common law: fraudulent concealment (Count IV). The other is based on statute: the Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA) (Count III). Both turn on common allegations of fraud: that Defendants misrepresented the quality of the windows and concealed or failed to disclose information about them. FAC ¶¶ 152, 156, 165, 167. And both claims are subject to the heightened pleading standard under Fed. R. Civ. P. 9(b). *See Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 568–69 (7th Cir. 2012) (rule 9(b) applies to fraudulent misrepresentation and fraudulent concealment claims); *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014) ("Since Camasta's claim was of fraud under the ICFA, the sufficiency of his complaint is analyzed under the heightened pleading standard set forth in Federal Rule of Civil Procedure 9(b).").

To prevail on an ICFA claim, "[t]he plaintiff must prove that (1) the defendant committed a deceptive act or practice; (2) the defendant intended for the plaintiff to rely on the deception; (3) the deception happened in the course of trade or commerce; and (4) the deception proximately caused the plaintiff's injury." *Cocroft v. HSBC Bank USA, N.A.*, 796 F.3d 680, 687 (7th Cir. 2015).

The elements of a fraudulent concealment claim are:

(1) a false statement or omission of material fact; (2) knowledge or belief of the falsity by the party making it; (3) intention to induce the other party to act; (4) action by the other party in reliance on the truth of the statements; [] (5) damage

7

to the other party resulting from such reliance[, and (6)] the existence of a special or fiduciary relationship, which would raise a duty to speak.

*Weidner v. Karlin*, 932 N.E.2d 602, 605 (Ill. Ct. App. 2010) (citations and quotation omitted)

Rule 9(b) requires a plaintiff to allege fraud with particularity, "describing the who, what, when, where, and how of the fraud." *Camasta*, 761 F.3d at 738 (quotations omitted). Plaintiffs plead exactly zero of these particulars in any of their fraud claims. Instead, the Plaintiffs rely on bald conclusory statements and generally aver that Defendants should have disclosed that the windows were defective. But if allegations like these sufficed to state fraud claims under Rule 9(b), every product defect case could be transformed into a fraud. As one court noted in dismissing claims of fraudulent concealment and statutory fraud, "allegations of this nature . . . could be made about any alleged design defect in any manufactured product":

> In the complaint at issue here, plaintiff alleges that Alienware concealed a material fact, namely, the design defect. Second, plaintiff contends Alienware had a duty to disclose information regarding this material issue because it had: 1) exclusive knowledge as the manufacturer; 2) actively concealed the defect by failing to disclose; and 3) made partial disclosures in the form of statements about the computers. Third, plaintiff asserts that Alienware intended to defraud in order to increase its own profits. Fourth, plaintiff alleges reliance by stating that he would not have bought the computer or would have demanded a lower price had he known of the alleged latent defect. Finally, plaintiff alleges he has suffered harm, namely, a non-operable computer, as a result of the misconduct.

> The above allegations do not specify any factual basis for them. Indeed, allegations of this nature with respect to all prongs above could be made about any alleged design defect in any manufactured product. The heightened pleading requirements of Rule 9(b) were designed to avoid exactly this situation. Due to a lack of facts substantiating the fraud, plaintiff's fraudulent concealment claim is DISMISSED with prejudice. Consequently, plaintiff's UCL claim based on the fraudulent concealment is also DISMISSED with prejudice.

*Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 974-75 (N.D. Cal. 2008) (footnotes omitted) (citation omitted), *aff'd*, 322 F. App'x 489 (9th Cir. 2009).

Plaintiffs have not alleged a single false statement that could even give rise to a fraud claim. Rather, reading their FAC as a whole, Plaintiffs seem to be alleging that Defendants' subjective descriptions of quality constitute fraudulent misrepresentations, due to Defendants not disclosing an alleged product defect. FAC ¶¶ 10, 67, 88, 135, 147. But Illinois courts have steadfastly ruled that phrases such as those alleged here, like "superior construction" and "constructed with the highest grade materials, hardware, and glass" constitute "mere puffing" and cannot give rise to a fraud claim. *Avery v. State Farm Mutual Auto Insurance Co.,* 865 N.E. 2d 801, 846-47 (Ill. 2005) (finding characterization of parts as "quality" or "high performance criteria" constituted "puffing" that is not deceptive under the ICFA as a matter of law).

Plaintiffs allege, "upon information and belief, Defendants knew that, at the time Windows left their control, the Windows contained the defect described herein resulting in water intrusion and wood rot." FAC ¶ 154. But there is no "defect described herein;" Plaintiffs never describe or identify the alleged defect in the windows, other than to reductively allege that they leak. So Plaintiffs essentially allege that Defendants knew the windows would leak, but they do not offer a single fact to support this allegation. Moreover, a plaintiff "generally cannot satisfy the particularity requirement of Rule 9(b) with a complaint that is filed on information and belief." *Bankers Trust Co. v. Old Republic Ins. Co.,* 959 F. 2d 677, 683 (7th Cir. 1992). The Seventh Circuit permits an exception to this rule when (1) the facts constituting the fraud are not accessible to plaintiff and (2) the plaintiff provides "the grounds for his suspicions." *Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. Walgreen Company,* 631 F. 3d 436, 443 (7th Cir. 2011). But Plaintiffs provide no grounds for their suspicions that Windsor knew the windows would leak. Instead, they allege only that their windows leaked and Windsor (allegedly) did not honor the warranty.

As such Plaintiffs' fraud claims are based on nothing more than disappointed commercial expectations, clothed in conclusory allegations. They are thus exactly the kinds of reputation-harming claims that Rule 9(b) was designed to protect against:

> By requiring the plaintiff to allege the who, what, where, and when of the alleged fraud, the rule requires the plaintiff to conduct a precomplaint investigation in sufficient depth **to assure that the charge of fraud is responsible and supported, rather than defamatory and extortionate.**

*Camasta*, 761 F.3d at 738 (quotations omitted) (emphasis added). Entirely absent from Plaintiffs' FAC is the who, what, when, where, or how of the alleged fraud. Consequently, as pleaded, we have no reason to believe that these claims are anything more than a "defamatory and extortionate" attempt at a class action settlement, *see id.*, accompanied by a fishing expedition, *see Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994) ("[Rule 9(b)] is said to serve three main purposes: (1) protecting a defendant's reputation from harm; (2) minimizing 'strike suits' and 'fishing expeditions'; and (3) providing notice of the claim to the adverse party.").

### B. Because Defendants Had no Duty to Disclose to Plaintiffs, Plaintiffs' Fraud Claims Fail.

Plaintiffs base their fraud claims on Defendants allegedly breaching a duty to disclose defects in the windows. But Defendants owed Plaintiffs no duty whatsoever, and the FAC does not provide a factual basis from which it could be inferred that Defendants had a duty to disclose. *Alexandra Global Master Fund, Ltd. v. Ikon Office Solutions, Inc.*, No. 06 CIV. 5383 2007 WL 2077153, at *9 (S.D.N.Y. July 20, 2007) (dismissing fraud claim based on nondisclosure because plaintiff did not support its "legal conclusion" that defendant "'had an affirmative duty to disclose'" with factual allegations for "a plausible argument that [defendant] had a duty to disclose").

"A duty to disclose arises only when the parties have 'a special or fiduciary relationship, which would raise a duty to speak.'" *Greenberger v. GEICO Gen. Ins. Co.*, 631 F.3d 392, 401 (7th Cir. 2011) (quoting *Neptuno Treuhand–Und Verwaltungsgesellschaft Mbh v. Arbor,* 692 N.E.2d 812, 817 (Ill. Ct. App. 1998)). But that relationship simply does not exist in cases, such as this case, between a product-manufacturer and a product-user. *See Manning v. Ashland Chem. Co.*, 498 F. Supp. 1382, 1383 (N.D. Ill. 1980) (granting summary judgment on fraud claim because manufacturer had no duty to disclose to consumer); *see also Ruth v. A.O. Smith Corp.*, No. 1:04-CV-18912, 2005 WL 2978694, at *4 (N.D. Ohio Oct. 11, 2005) (concluding that no fiduciary relationship existed between manufacturers and consumer, Ruth: "The relationship between Ruth and the defendants in this case was simply one of product-user / product-manufacturer.").

Likewise, the facts as pleaded—particularly in light of Rule 9(b)—simply cannot be enough to impose a duty to disclose on Defendants as to Plaintiffs. Defendants and Plaintiffs have never met. George's only alleged connection with Defendants was through a distributor. And the Kotys' connection with Defendants is even more remote, through windows that Windsor placed into the stream of commerce at least three steps removed from the Kotys: the Kotys bought a house; that house contained windows; those windows were purchased by a builder; that builder bought those windows from a distributor; and that distributor ultimately bought them from their manufacturer, Windsor. Thus, there was simply no relationship between Defendants and Plaintiffs. *See Kennedy v. MI Windows & Doors, Inc.*, 2013 WL 267853, at *4 (D.S.C. Jan. 24, 2013) ("[T]he complaint does not allege specific facts that detail fraudulent transactions between [the window manufacturer] and [the downstream homebuyer]. Furthermore, as [the homebuyer] has not alleged that he conducted any transaction at all with MIWD, he has failed to

allege that he had any special relationship with MIWD that would have given MIWD a duty to speak.").

In sum, the fraud claims (Counts III-IV) must be dismissed because Plaintiffs have not pleaded the fraud with requisite particularity under Rule 9(b) and have alleged no basis whatsoever for the predicate duty to disclose.[3]

### III. The Kotys' express warranty claim (Count II) fails because the Kotys have not alleged any facts indicating that Defendants breached the warranty.

#### A. Defendants Honored the Express Warranty.

"A manufacturer's liability for breach of an express warranty derives from, and is measured by, the terms of that warranty." *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 525 (1992). The version of the Pinnacle 20/10 Limited Warranty that applies to the Kotys' windows warrants that, for non-glass-component defect claims brought within 10 years of manufacture, "Windsor will provide replacement parts, free of charge," but will not pay associated labor costs:

> **EXCLUSIONS**: The following items or conditions are specifically excluded from the remedies provided by this warranty:
>
> 1. Any Labor for removal, repair or replacement of defective parts, products or glass, or any repainting refinishing costs, except as noted above.

---

[3] Moreover, with the inadequately pleaded fraud stripped away, Plaintiffs' ICFA claim (Count III) is revealed to be nothing more than a simple breach of warranty claim. That is not a violation of the act. *See Reid v. Unilever U.S., Inc.*, 964 F. Supp. 2d 893, 913–14 (N.D. Ill. 2013) ("[T]o set forth an action under a consumer protection law, a party must allege unfair or deceptive conduct that is distinct from a simple breach of contract. Were it otherwise, a plaintiff could convert any suit for breach of contract into a consumer fraud action, as all breach of contract actions involve a promise and a subsequent failure to perform.") (quotation and citations omitted); *see also Ellis v. Louisiana-Pac. Corp.*, 699 F.3d 778, 787 (4th Cir. 2012) (describing allegation that manufacturer unfairly and deceptively "fail[ed] to give adequate warnings and notices about the allegedly defective quality of the Trim-board" as "simply re-couch[ing] Appellant's breach of warranty claim"); *Marvin Lumber & Cedar Co. v. PPG Indus., Inc.*, 223 F.3d 873, 877 (8th Cir. 2000) (describing "ordinary warranty claims" as including a claim that a manufacturer "warranted that [the product] would adequately prevent wood rot, but [that] the product failed").

. . . .

**LIMITS OF LIABILITY**

Windsor is not liable for any . . . costs of installation of replacements . . . .

Exhibit 1, McMillen Decl., ¶¶ 4-5, 7, Ex. A.

The sole breach-of-warranty theory that the Kotys have put forth is that "Defendants refused to pay for the labor required to address the issues with the Windows." FAC ¶ 71. The Kotys do not allege that Defendants failed to comply with one of their affirmative warranty obligations, like offering free replacement parts.[4]

Thus, the FAC pleads no breach, and the Kotys' warranty claim must be dismissed.

**B. The Kotys' Efforts To Avoid Enforcement Of The Labor Exclusion Fail.**

The Kotys would like to live in a world in which the labor exclusion was not in the Pinnacle Limited 20/10 Warranty. Plaintiffs allege that Windsor should be (1) "estopped from relying on any warranty limitation or disclaimer" because (2) the warranty "fails its essential purpose" and (3) is unconscionable. FAC ¶¶ 112, 115-17. But each of their attempts to retroactively change the terms of the warranty must be rejected.

**1. Estoppel Does Not Apply.**

No court, in any jurisdiction, in any decision recorded by Westlaw, has applied estoppel to refuse to enforce a warranty limitation or disclaimer. That is because estoppel is entirely irrelevant to the Kotys' efforts to avoid the terms of the warranty. "The traditional elements of equitable estoppel are (1) misrepresentation by the party against whom estoppel is asserted; (2)

---

[4] The Kotys are right not to make such an allegation, as it would not be true. As Defendants stated in their initial Answer to the initial Complaint, Windsor "offered to provide replacement parts at no charge." ECF Doc. 19 ¶ 67. The Kotys have not disputed this allegation, despite the opportunity that they had to do so when they amended their initial Complaint with the FAC.

reasonable reliance on that misrepresentation by the party asserting estoppel; and (3) detriment to the party asserting estoppel." *Olson v. Bemis Co.*, 800 F.3d 296, 306 (7th Cir. 2015) (quotation omitted). In this case, the Kotys have alleged none of the elements of equitable estoppel.

In an analogous case, the Third Circuit rejected the plaintiffs' assertion that equitable estoppel barred the defendant, Ford, from relying on the express warranty's exclusion of coverage for damages caused by aftermarket parts. *Reese v. Ford Motor Co.*, 499 F. App'x 163, 168–69 (3d Cir. 2012). The warranty in *Reese* unambiguously stated that it did not cover damages caused by the installation of aftermarket parts. *Id.* "Nonetheless, the Reeses argue[d] that the doctrine of equitable estoppel should bar Ford from relying on this provision because it induced the Reeses into believing the vehicle was comprised completely of Ford parts when in fact that vehicle contained aftermarket wiring." *Id.* The Third Circuit rejected the plaintiffs' argument that equitable estoppel applied because the plaintiffs alleged "no words, deeds or representations by Ford on which they reasonably could have relied. Without that evidence, their breach of express warranty claim is doomed." *Id.*

Similarly, the Kotys have failed to allege any facts that could raise an equitable estoppel issue. They have alleged that their windows are defective in that they leak. The express warranty addresses that eventuality by providing for the replacement parts -- but not the labor -- required to fix the windows. The Kotys have not alleged any facts that make this agreement unenforceable, much less that indicate that Defendants made any misrepresentation or "informal promise" that led the Kotys to think the warranty said anything other than what it plainly said – namely, that labor was excluded. On the contrary, the Kotys knew and understood the warranty's terms; only now, more than eight years later, they do not like what the warranty provides. Thus, just like the plaintiffs in *Reese*, the Kotys' assertion of equitable estoppel fails.

14

### 2.  The "Fails Its Essential Purpose" Test Does Not Apply.

The Kotys allege that "any warranty provided by Defendants fails its essential purpose because it purports to warrant that the Windows will be free from defects for a prescribed period of time when in fact said Windows fall far short of the applicable warranty period." FAC ¶ 115.[5] The Kotys' argument fails because they have not alleged that Windsor failed to meet its warranty obligations. They rather argue that Windsor declined to do what the warranty did not require (and they carefully avoid mentioning that Windsor offered them replacement parts under the warranty, which Windsor alleged in its first Answer, ECF Doc. 19 ¶ 67, and which Plaintiffs do not dispute).

The "fails its essential purpose" test was created by Article 2 of the Uniform Commercial Code ("UCC"). 810 ILCS 5/2-719(2). This test does not apply here because Article 2 applies only to a transaction in goods, and the Kotys acquired the windows only after their installation in their home, through a transaction in real estate. *See Weiss v. MI Home Prods., Inc.*, 877 N.E.2d 442, 445-46 (Ill. Ct. App. 2007) ("Windows may be goods when they are movable objects not attached to real estate; however, when by their physical annexation to real estate they have become, in legal contemplation, part of the real estate, they are no longer goods within the meaning of the UCC. Accordingly, we find the plaintiffs do not have a valid claim under the UCC.").

---

[5] This allegation is odd to begin with because the stated purpose of the applicable express warranty is to provide a remedy when there *is* a window defect. *Cf. Ball v. Sony Electronics Inc.*, 2005 WL 2406145, at *3 (W.D. Wis. Sept. 28, 2005) ("Plaintiff maintains that the written warranty was a representation that the camcorder was free of defects. Quite the contrary, a written warranty of the type included with the camcorder is an express acknowledgment that the product may be defective and a promise by defendant to remedy such a defect in the manner and within the time period prescribed. Defendant's express promise to remedy defects in a product is not a representation that there are none, but an acknowledgment that there might be").

But, even if this UCC test did apply, it would be unavailing to the Kotys. Under the test, "[w]here circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this Act." 810 ILCS 5/2-719(2). The Kotys argue that the "**warranty** . . . fail[ed] its essential purpose." FAC ¶ 115 (emphasis added). But **warranties** don't fail their essential purpose; **remedies** do. *See* 810 ILCS 5/2-719(2) ("Where circumstances cause an exclusive or limited **remedy** to fail of its essential purpose . . . .") (emphasis added). And the Kotys provide no indication that, when Windsor declined to pay labor costs that the warranty did not obligate it to pay (but offered replacement parts), the warranty's free-replacement-parts remedy failed its essential purpose. Consequently, their fails-its-essential-purpose argument fails because the FAC provides no indication that Windsor "fail[ed] to meet the obligations under [a limited warranty]" that required repair or replacement. *V-M Corp. v. Bernard Distrib. Co.*, 447 F.2d 864, 865, 868–69 (7th Cir. 1971). As the Illinois Appellate Court has explained,

> The essential purpose of a damage or remedy limitation is providing the seller an opportunity to tender conforming goods and thereby limit its exposure to risk for other damages, while simultaneously providing the purchaser with the benefit of his bargain-i.e.-conforming goods. This is not a case where the seller unreasonably delayed replacement of the product or refused to replace it at all. Instead, as the trial court found, Bristol Metals and Robert-James replaced the defective materials free of charge . . . .

*Intrastate Piping & Controls, Inc. v. Robert-James Sales, Inc.*, 733 N.E.2d 718, 725 (Ill. Ct. App. 2000) (quotation and citations omitted). The court concluded that, "[b]ecause [the plaintiff] received the only remedy to which it was entitled under the contracts—the benefit of its bargain, non-defective pipe—the remedy limitations here did not fail of their essential purpose." *Id.*

In short, the Kotys do not and cannot allege that "circumstances cause[d] an exclusive or limited remedy"—that is, the provision of free replacement parts—"to fail of its essential purpose." *See* 810 ILCS 5/2-719(2).

### 3. The Express Warranty's Labor Exclusion Is Not Unconscionable.

The Kotys allege that the warranty's labor exclusion is unconscionable. *See* FAC ¶¶ 116-17. They are mistaken, regardless of whether the UCC applies. *See* 810 ILCS 5/2-719(3) ("Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable."). "Whether a contract is unconscionable is a question of law to be decided by the court, not a jury." *Hanover Ins. Co. v. N. Bldg. Co.*, 751 F.3d 788, 794 (7th Cir. 2014) (citation omitted), *cert. denied*, 135 S. Ct. 280 (U.S. 2014). In this case, based on the FAC and the text of the warranty, the court can determine that the labor exclusion is not unconscionable.

Indeed, Illinois courts have specifically found that comparable labor exclusions were not unconscionable but instead were enforceable as a matter of law. *See Intrastate Piping & Controls, Inc.*, 733 N.E.2d at 725-726 (finding labor exclusion to limited warranty was not unconscionable under the Illinois UCC Section 2-719(3)). Similarly, in *Ball v. Sony Electronics, Inc.*, the court instructively reasoned that a manufacturer's warranty "to repair or replace the product under the circumstances enhanced rather than limited plaintiffs' contractual rights" and therefore could not be unconscionable. 2005 WL 2406145, at *6 (W.D. Wisc., Sept. 28, 2005). The court stated:

> [a] remedial promise by a manufacturer to a remote purchaser does not displace the implied warranties that arose between the purchaser and his or her immediate seller, but is an additional benefit independent of the sales contract accruing to the purchaser as a matter of unilateral contract….
>
> [A] third party warranty can only add to the deal, not take away. If what is added is limited, then the buyer still comes out ahead, and the buyer can still sue on the

contract with the direct seller unless that seller in its own contract with the buyer has contractually limited all recourse against it.

*Id.*; *see Harbison v. Louisiana-Pac. Corp.*, 602 F. App'x 884, 886–87 (3d Cir. 2015) (concluding that a warranty's damages limitation was "not unconscionable," reasoning that, "because the warranty as a whole provides Harbison with a benefit he would not otherwise have, the damages limitation was not unconscionable").

In sum, when the Kotys purchased their house, they received a house with windows in it, plus a limited warranty for replacement parts in the event the windows were defective within the first ten years. Such a contract is a far cry from unconscionable, since the Kotys received a benefit in addition to the house with its windows and any additional protections that may have been granted by their builder and the window distributor. The Kotys now want more. But that present desire does not render the labor exclusion included in the warranty more than eight years ago unconscionable.

The Kotys' express warranty claim (Count II) must be dismissed.

## IV. The Unjust Enrichment Claim (Count VIII) Fails Because an Express Warranty Governs.

"Illinois law is . . . clear: damages for unjust enrichment are not awardable when, as here, there is a contract between the parties on the subject in dispute." *Prima Tek II, L.L.C. v. Klerk's Plastic Indus., B.V.*, 525 F.3d 533, 541 (7th Cir. 2008). An unjust enrichment claim must be dismissed when it is "nothing more than an attempt to unilaterally amend the agreement in a manner prohibited by the agreement." *Indus. Lift Truck Serv. Corp. v. Mitsubishi Int'l Corp.*, 432 N.E.2d 999, 1003 (Ill. Ct. App. 1982); *see Ball*, 2005 WL 2406145, at *6 ("Unjust enrichment is not a mechanism for supplementing that which a purchaser perceives as inadequate contractual remedies.").

The Kotys and George alike have effectively conceded all that is needed to prohibit their unjust enrichment claim: that there is a warranty (a contract) on the subject in dispute. Indeed, they extensively describe the warranty's contents, and they seek relief based on an allegation that there was a breach of the express warranty. *See* FAC ¶¶ 49, 129-43.That requires dismissal of their claim (Count V), as in *Martin*. *See Martin v. LG Elecs. USA, Inc.*, No. 14-CV-83-JDP, 2015 WL 1486517, at *8 (W.D. Wis. Mar. 31, 2015) (Plaintiff "concedes that he has a warranty. A warranty is an express contract. Therefore, his unjust enrichment claim will be dismissed.") (citation omitted).

## V. Plaintiffs' Requested Declaratory Relief (Count V)—Which Consists Largely of *Injunctive* Relief – Cannot be Granted Under the Declaratory Relief Statute.

The scope of the declaratory relief statute authorizes this Court only to "declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a); *see Steffel v. Thompson*, 415 U.S. 452, 471 (1974) ("[E]ven though a declaratory judgment has 'the force and effect of a final judgment,' 28 U.S.C. s 2201, it is a much milder form of relief than an injunction. Though it may be persuasive, it is not ultimately coercive; noncompliance with it may be inappropriate, but is not contempt.") (quotation omitted); *Deveraux v. City of Chicago*, 14 F.3d 328, 331 (7th Cir. 1994) ("[B]ecause nothing in the declaratory judgment plaintiffs seek would bind the City or alter the legal relationship of the parties, we conclude that the district court properly dismissed plaintiffs' action for failure to allege a case or controversy.").

But much of the relief that Plaintiffs request is *injunctive*, not declaratory, and thus beyond the scope of the declaratory relief statute. For example, they want this Court to order Defendants to modify the express warranty and this Court to "establish an inspection program and protocol, under Court supervision," through which "[a]ny disputes over coverage shall be

19

adjudicated by a Special Master appointed by the Court and/or agreed to b[y] the parties." FAC ¶ 181(e), (g). That is a far cry from "declar[ing] the rights and other legal relations." *See* 28 U.S.C. § 2201(a).

The remainder of Plaintiffs' request is declaratory, but not the sort declaratory relief authorized by the statute, for two reasons. First, as argued above, all of the Kotys' claims must be dismissed, and all but George's warranty claim must be dismissed, and therefore the only declaratory relief available (if any) would need to pertain to George's warranty claim.[6]

But, under the second reason, not even relief as to George's warranty claim is authorized. The reason is that the statute authorizes a declaration of the rights and relations "that will govern the parties' relationship *in the future*," *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 711 (7th Cir. 2002) (emphasis added), as "[t]he purpose of a declaratory judgment is to allow the parties to understand their rights and liabilities *so that they can adjust their future action to avoid unnecessary damages*." *Rockwell Int'l Corp. v. IU Int'l Corp.*, 702 F. Supp. 1384, 1388 (N.D. Ill. 1988) (emphasis added). *See also Basic v. Fitzroy Eng'g, Ltd.*, 949 F. Supp. 1333, 1338 (N.D. Ill. 1996) ("[T]he purpose of declaratory relief is to allow a party to avoid damage prior to an impending injury-causing event."), *aff'd*, 132 F.3d 36 (7th Cir. 1997). But Plaintiffs are not seeking a declaration of *future* rights and relations. They rather are attempting to re-write history

---

[6] "Although Congress has authorized courts to issue declaratory relief in some cases, this authority is merely procedural. The constitutional requirement of a justiciable case or controversy remains applicable." *Cornucopia Inst. v. U.S. Dep't of Agric.*, 560 F.3d 673, 676 (7th Cir. 2009) (citation omitted). When all of a plaintiff's "substantive claims" are dismissed, "[i]t necessarily follows that his claim[] for declaratory relief . . . [be] dismissed." *Johnson v. Shemonic*, No. CIV.10-071-GPM, 2010 WL 3894019, at *5 (S.D. Ill. Sept. 30, 2010); *see Williams v. Illinois Dep't of Corr.*, No. 4-10-0128, 2011 WL 10481473, at *6 (Ill. Ct. App. Feb. 18, 2011) ("[B]ecause plaintiff did not allege a cognizable claim, he is not entitled to declaratory relief."); *see LaSalle Nat. Trust, N.A. v. Schaffner*, 818 F. Supp. 1161, 1173 (N.D. Ill. 1993) ("Since there is no live case or controversy over indemnity at this point, Chicagoland's claims for declaratory relief on the waiver and estoppel issues, going to the ultimate question of indemnity, will be dismissed.").

to improve their current situation.  *See, e.g.*, FAC ¶ 181.1.a.-b. (requesting declarations that "the Windows have a defect" and describing the defect).

Therefore, the declaratory relief claim (Count VI) must be dismissed.[7]

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court to dismiss all of the Kotys' claims and all but George's express warranty claim (Count II).

---

[7] Plaintiffs seem to hope that their proposed declarations and injunctions could help form the basis of an injunctive class under Fed. R. Civ. P. 23(b)(2). *See* FAC ¶ 181. But, even if this case reaches that stage, the certification petition will fail, for at least two reasons. First, Plaintiffs and their putative class would be seeking primarily (if not exclusively) money damages, and Rule 23(b)(2) "does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages." Fed. R. Civ. P. 23, **subdivision b(2)** cmmts. Second, "Rule 23(b)(2) applies only when *a single* injunction or declaratory judgment would provide relief to each member of the class." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2557 (U.S. 2011). But that is not what Plaintiffs seek. Rather, they want this Court to order that *notice* be given to class members "of the defect" and "an inspection program and protocol, under Court supervision." FAC ¶ 181.b.-g. Then, *if* a class member "request[ed]" an inspection of their home, Defendants would inspect, and "[a]ny disputes over coverage shall be adjudicated by a Special Master appointed by the Court and/or agreed to b[y] the parties."  FAC ¶ 181.g. But, as the Seventh Circuit has noted,

> That the plaintiffs have superficially structured their case around a claim for class-wide injunctive and declaratory relief does not satisfy Rule 23(b)(2) if as a substantive matter the relief sought would merely initiate a process through which highly individualized determinations of liability and remedy are made; this kind of relief would be class-wide in name only, and it would certainly not be final.

*Jamie S. v. Milwaukee Pub. Sch.*, 668 F.3d 481, 499 (7th Cir. 2012).

Dated:  January 11, 2016

Respectfully submitted,

COTSIRILOS,    TIGHE,    STREICKER,
POULOS & CAMPBELL, LTD.

By: /s/  Matthew S. Ryan
Matthew S. Ryan
Theodore T. Poulos
Cotsirilos, Tighe, Streicker,
      Poulos & Campbell, Ltd.
33 North Dearborn Street, Suite 600
Chicago, Illinois 60602
(312) 263-0345
mryan@cotsiriloslaw.com

*Of Counsel:*

ARTHUR, CHAPMAN, KETTERING,
SMETAK & PIKALA, P.A.

Michael P. North (MN #230716)
Sarah E. Bushnell (MN #326859)
500 Young Quinlan Building
81 South Ninth Street
Minneapolis, MN 55402-3214
P: (612) 339-3500
F: (612) 339-7655
mpnorth@ArthurChapman.com
sebushnell@ArthurChapman.com

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that the following documents:

- The Windsor Window Company and Woodgrain Millwork, Inc.'s Rule 12(b)(6) Partial Motion to Dismiss the Amended Complaint;

- The Windsor Window Company and Woodgrain Millwork, Inc.'s Memorandum of Law In Support of Their Rule 12(b)(6) Partial Motion to Dismiss the Amended Complaint;

- The Windsor Window Company and Woodgrain Millwork Inc.'s Motion for Leave to File a Brief in Excess of 15 Pages, *Instanter*; and

- The Windsor Window Company and Woodgrain Millwork Inc.'s Motion for and Enlargement of Time to File a Responsive Pleading to Plaintiff John George's Breach of Express Warranty Claim

were served on January 11, 2016 in accordance with Fed. R. Civ. P. 5, LR 5.5, and the General

Order on Electronic Case Filing (ECF) pursuant to the District Court's system as the ECF filers.

Respectfully submitted,


By: /s/ *Matthew S. Ryan*